(No. 37132.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES BANKHEAD, Plaintiff in Error.

*Opinion filed February 1, 1963.*

THOMAS S. METSKAS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and RUDOLPH L. JANEGA and EDWIN J. BELZ, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, James Bankhead, was convicted of unlawfully possessing narcotic drugs after a bench trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of not less than five nor more than ten years. The sole issue presented on this writ of error is whether the trial court, by denying a motion to suppress the admission into evidence of a packet of heroin, deprived defendant of his constitutional rights against unreasonable search and seizure.

Bernard Brown, the arresting officer, testified that on the morning of August 8, 1960, about 11:45 P.M., a person purporting to be the manager of the Sacramento Hotel in Chicago telephoned the narcotics bureau and informed him there were several narcotics users in the hotel. He went to the hotel about an hour later, accompanied by two other officers, where he met with the manager, one Sam DeGraff, and was again told by the latter that several persons were selling and using narcotics in Room 404. According to the officer, he advised DeGraff he could not break the door down, but would have to procure a search warrant, whereupon DeGraff volunteered that he would have the janitor admit the officers to the room with a passkey. This was done, and as Brown entered the room, he saw defendant throw a piece of tinfoil on the floor. When retrieved the package was found to contain a white powder and when a field test gave a positive reaction defendant was placed under arrest. It was this packet of powder, determined by a subsequent chemical analysis to be heroin, which defendant sought to suppress from evidence. Concluding his testimony, officer Brown stated that defendant's brother and either three or four women were also present in the room.

The hotel manager, who was called at the hearing as a court's witness, denied that he had telephoned the police. By his version, Brown and the other officers appeared at

the hotel about 1:00 P.M. and inquired if a man named Bancroft was in Room 404. The witness said that after he informed the officer Bancroft was in the room, but registered under the name of Gray, Brown asked if he could have a passkey. This request was refused but according to DeGraff's further testimony he did call the janitor and instructed the latter to knock on the door of the room and to admit the officers if nobody was there.

Defendant, appearing as a witness in his own behalf, testified that the room was rented by his brother by the week, and that the officers had entered without permission, without knocking and without announcing who they were. Further, he stated the door was locked, that nobody in the room had summoned the police and that there had been no loud noises or disturbance in the room prior to the time the officers entered.

In the People's brief a claim is made that the arrest without a warrant was justified on the ground that officer Brown had reasonable grounds to believe a crime was being committed in his presence, thus manifesting some disposition "to build the lawfulness of the search on the lawfulness of the arrest and so justify the search and seizure without a warrant." (*McDonald* v. *United States,* 335 U.S. 451, 453-454, 93 L. ed. 153, 157.) This cannot constitutionally be done, however, for the decisions make it clear that the legality of a search is not to be determined by its results, and that where there is a wrongful entry upon protected premises without either a search warrant or an arrest warrant to justify it, the fruits of the entry are tainted with illegality. (*People* v. *Parren,* 24 Ill.2d 572; *People* v. *Dalpe,* 371 Ill. 607; *McDonald* v. *United States,* 335 U.S. 451, 93 L. ed. 153; *Johnson* v. *United States,* 333 U.S. 10, 92 L. ed. 436.) The proof here shows that until the officers entered the room they had no reason either to know or suspect that defendant had committed any crime, or that he was even present, with the result that

defendant's arrest was predicated in its entirety upon information obtained after entry to the room was gained. As we see it, the critical and pivotal issue to be determined is whether entry to the room without a search warrant or without permission of its occupants was reasonably justified.

We recently held in *People* v. *Parren,* 24 Ill.2d 572, that information provided by an anonymous informer, while relevant to the issue of reasonable cause, is not alone a sufficient basis to forego the constitutional requirement of obtaining a search warrant. At the same time, however, our opinion recognized that information given by an informer may under some circumstances be a reasonable basis for search or arrest without a warrant, as where the identity and reliability of the informer is known and, presumably, where some emergency exists to justify the failure to seek out a warrant. In the instant case there is credible testimony that information of a crime was given to the arresting officer, and that the identity of the informer was known, but there is nothing shown in the way of past experience or the like to impel a conclusion that police reliance upon his information was reasonable. However, coupled with the known identity of the informer are these circumstances: First, that the information related to a crime involving narcotic drugs, such crimes usually being solitary vices practiced in secrecy and seldom openly discoverable; second, that the crime was being committed in a hotel room suggesting transitory offenders; and third that the narcotics themselves might be consumed if the police did not act quickly. And while we think the total circumstances here come close to affording a reasonable basis for the officers to have by-passed the constitutional requirement for a search warrant, our desire to follow the decisions of the United States Supreme Court on identical State and Federal constitutional problems dictates a contrary result. Specifically, we refer to the decision in

*Johnson* v. *United States,* 333 U.S. 10, 92 L. ed. 436, under greatly similar facts.

In *Johnson* a known informer advised the Seattle police that unknown persons were smoking opium in the Europe Hotel. The informer was taken back to the hotel to interview the manager, but he returned at once saying he could smell burning opium in the hallway. The police then relayed this information to Federal narcotics agents and the latter came to the hotel. All were experienced in narcotic work and recognized at once a distinctively strong and unmistakeable odor of burning opium. The odor led them to a certain room, whose occupant was unknown, and, after knocking at the door and identifying themselves as police, the agents were admitted to the room by the occupant. Upon entry the officers determined the identity of the occupant and, after searching the room, discovered opium and incriminating smoking apparatus. A Federal district court refused to suppress this evidence and a Circuit Court of Appeals affirmed. On further review, however, the Supreme Court reversed, holding first that the circumstances were "certainly * * * not enough to by-pass the constitutional requirement" of presenting the evidence to a magistrate and obtaining a search warrant; (333 U.S. at 15, 92 L. ed. at 441,) and, second, that the arrest did not justify the search inasmuch as it was based upon observations made after admission to the room had been obtained under color of police authority. The same conclusions, we believe, must be reached under the facts of the present case, where there was not the slightest semblance of authority or permission for the officers to enter the room.

Attempting to justify the intrusion without a warrant the People rationalize that defendant was only a guest at the hotel, that a guest of the hotel has only the right to use the premises subject to the landlord's control and right of access to them, and therefore that the janitor, as

the owner's agent, had a right to open the defendant's door, making the entry a legal one. We see little in this logic, drawn largely from tort cases, to commend it to the present situation. Whatever rights a hotel has with respect to control and access to a room does not include the authority to admit strangers without legal process, and most certainly does not invest the landlord with the power to waive the constitutional rights of a guest. As was aptly observed by Mr. Justice Frankfurter in *Jones* v. *United States,* 362 U.S. 257, 266, 4 L. ed. 2d 697, 705: "Distinctions such as those between 'lessee,' 'licensee', 'invitee' and 'guest,' often only of gossamer strength, ought not to be determinative in fashioning procedures ultimately referable to constitutional safeguards." Here, as in *Jones,* there is no question but what defendant was lawfully on the premises and, such being the case, he was entitled to the constitutional protection against unreasonable search. See also: *McDonald* v. *United States,* 335 U.S. 451, at 456, 93 L. ed. 153, at 159.

Since it appears there was no reasonable basis to justify the search without a warrant, and that defendant's constitutional rights were violated in such respect, it was error to overrule the motion to suppress. Accordingly, the judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*