[Nos. 1795-1; 1820-1.    Division One.    November 12, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE EDWARD BROWN *et al., Appellants.*

938

*Stern, Gayton, Neubauer & Brucker, P.S., Gary D. Gayton* and *Bruce D. Erickson,* for appellants.

*Christopher T. Bayley, Prosecuting Attorney, Lee D. Yates* and *Edward L. Douglas, Jr., Deputies,* for respondent.

FARRIS, J.—The defendants were tried by a jury and found guilty of the crime of possession of heroin with unlawful intent to deliver. This appeal followed.

At approximately 5:45 p.m. on February 10, 1972, officers of the Seattle Police Department following a lead from the Portland Police Department located two automobiles, which were known to be used by the defendants, at the Cosmopolitan Motel in Seattle. After ascertaining the motel registration information on the three defendants and remaining in the area until 11 p.m., five detectives positioned themselves around the motel room of the defendants. One of them knocked at the door and identified himself as a police officer in response to an inquiry from within. The draperies on a window adjacent to the door were parted and quickly closed. The court believed the testimony of the police officers, which was disputed by the defendants, that the draperies remained partially open at the bottom. One of the officers was able to crouch down, look through the opening and see defendant Henderson grab a boot box from a shelf, thereby allowing "two white balls, rubber prophylactics" to fall from the box. Defendant Lopes took the box, scooped up the white balls and entered the bathroom. The

officer reported what he had seen to a fellow officer, who pushed open the motel room door (which had been partially opened by defendant Brown) and the detectives entered. Heroin was discovered in the boot box, on the bathroom floor, and in two balloons which were retrieved from the flushing toilet.

At a hearing on the defendants' motion to suppress evidence, their request to exclude certain state witnesses was denied by the trial court. The request of a California attorney, who had frequently represented Brown, to participate in the proceeding was also denied. The court held that the warrantless search was proper and denied the motion to suppress.

■ A motion to exclude witnesses is almost universally granted. We can find no basis in the record for the denial of the request. Good practice is to grant the motion in the absence of a compelling reason to deny it, since the accused in making the request believes that the exclusion will aid the fairness of his trial. The court erroneously believed that as a matter of law its ruling on this issue in a hearing on a motion to suppress should vary from its ruling on the same question in the case-in-chief.

Nevertheless we cannot find upon the record before us that the court abused its discretion in failing to grant the request. We find no prejudice to the accused nor has any specific prejudice been alleged. Moreover, the question was tried to the court; prejudice under these circumstances will not be presumed. *See State v. Miles*, 77 Wn.2d 593, 464 P.2d 723 (1970).

■ We find no abuse of discretion in the refusal of the trial court to permit the California attorney to act in the matter. RCW 2.48.170 provides that only active members of the Washington bar shall practice law in Washington, except that "a member of the bar in good standing in any other state or jurisdiction shall be entitled to appear in the courts of this state under such rules as the board of governors may prescribe." The Washington court rules allow a

member in good standing of the bar of another state to appear as trial counsel in association with a member of the Washington bar, with the permission of the court. Application for such a special appearance "shall be heard by the court after such notice to the adverse parties as the court shall direct; and an order granting or rejecting the application made, and if rejected, the court shall state the reasons therefor." APR 7. The trial judge complied with this rule. The record shows that in 1957 the attorney was disbarred in California following his conviction for subornation of perjury and readmitted to practice in 1962. This fact was not mentioned in the April 5 request for him to represent Brown, which was not acted upon until the May 26 date of trial. The failure to grant the request or to act upon it prior to the date of trial was not an unconstitutional denial of Brown's right to counsel. The question was within the trial court's sound discretion. The record does not support the allegation that the discretion was abused. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971); *Reid Sand & Gravel, Inc. v. Bellevue Properties,* 7 Wn. App. 701, 502 P.2d 480 (1972).

The critical question is whether the police, in the absence of a search warrant or grounds upon which to base a request for a search warrant, obtained legally admissible evidence in a search which flowed from their decision, following observation of the motel for a period in excess of $5\frac{1}{2}$ hours, to knock on the motel room door and "play it by ear." Further, did the act of the officer in kneeling and peering through the crack in the curtains constitute an unlawful search rendering inadmissible any evidence seized?

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.

[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amend-

ment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

In *Taylor v. United States,* 286 U.S. 1, 76 L. Ed. 951, 52 S. Ct. 466 (1932), a seizure was held unconstitutional where a squad of prohibition officers, having received complaints for over a year, went to the defendant's property without a warrant. Smelling alcohol coming from the defendant's garage, they looked through a small opening and saw what they thought to be cases of contraband liquor. The garage was then broken into and the liquor seized.

The court in *State v. Howard,* 7 Wn. App. 668, 502 P.2d 1043 (1972) held that evidence seized by a police officer, who with the express intention of searching an automobile shined a flashlight into the front seat and found a cellophane package, was admissible. In dictum, the court indicated that the "plain view" doctrine was inapplicable because the officer had engaged in a search of the vehicle before observing the contraband.

However, the Illinois Supreme Court has limited the *Katz* sphere of privacy rationale to cases of electronic eavesdropping and permitted the use of evidence gained surreptitiously, but with the sole use of natural senses. *People v. Wright,* 41 Ill. 2d 170, 242 N.E.2d 180 (1968). In *Wright,* an officer observed gambling related activities through a partially curtained apartment rear window. The Illinois court held that the subsequent warrantless search of the apartment was valid as incident to a lawful arrest for which the officers had probable cause based on what had been seen and heard at the window.

■ *Katz* limited the protection from intrusion to that area in which a citizen has a reasonable expectation that his activity is conducted outside the sphere of possible government intrusion. Here, the defendant knowingly opened the motel curtains after the callers had identified them-

selves as police officers. In negligently failing to close them completely, he lost the reasonable expectation of privacy. We agree with the California court in *Cohen v. Superior Court,* 5 Cal. App. 3d 429, 434, 85 Cal. Rptr. 354 (1970), where police officers had received an anonymous tip regarding prostitution in a fourth floor apartment, stationed themselves on a fire escape outside a window and observed what appeared to be marijuana:

> Looking through a window which is adjacent to a common area available to the other tenants of an apartment building as well as to other persons admitted by such tenants, or the management, and having legitimate business upon the premises is not an unreasonable search or a violation of a person's privacy.

Although there was no reasonable ground for an arrest or probable cause for a search when the officers put the motel unit under surveillance, there was a reasonable ground based upon the information from the Oregon police for an investigation. As Mr. Justice Burton concurring in *Brinegar v. United States,* 338 U.S. 160, 179, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949), stated:

> It is only by alertness to proper occasions for prompt inquiries and investigations that effective prevention of crime and enforcement of law is possible. Government agents are commissioned to represent the interests of the public in the enforcement of the law and this requires affirmative action not only when there is reasonable ground for an arrest or probable cause for a search but when there is reasonable ground for an investigation.

When the officer saw in the possession of one of the defendants what he recognized as heroin, he had probable cause for an arrest and seizure of the contraband. *See State v. Brooks,* 7 Wn. App. 27, 497 P.2d 946 (1972); *State v. Isham,* 1 Wn. App. 415, 461 P.2d 569 (1969). The past information coupled with the present direct observation constituted probable cause, justifying an arrest without a warrant.

The trial court correctly concluded:

> Taking the defendants' contention that the degree of

proof required is clear and convincing evidence, I am satisfied there is clear and convincing evidence to support the legality of the search.

I am satisfied that any of our District Judges who had been presented with that could have considered, as of anytime up until the knock on the door, they would not have issued a search warrant.

I am also satisfied that if they issued one, counsel would have been in here and even more vehemently contending there was no basis for the search warrant.

And, I am satisfied that the court would have had to agree with him, that there was no basis for it.

I am satisfied, too, that Officer Short, with his training and experience, taken along with the information that he had of the identity of Mr. Brown as the individual who was one of the biggest heroin dealers in the Oakland-San Francisco area, the possibility that they might be coming to this area to deliver heroin, seeing what he saw, drew a reasonable conclusion that there was heroin on the premises. And that the entry with that knowledge, was legitimate, legal, and the seizure proper.

Affirmed.

JAMES and CALLOW, JJ., concur.

Petition for rehearing denied February 14, 1974.

Review denied by Supreme Court April 29, 1974.