(No. 54870.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES EICHELBERGER, Appellee.

*Opinion filed June 18, 1982.*

CLARK, GOLDENHERSH, and SIMON, JJ., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield, and James R. Benson, State's Attorney, of Paxton (Michael B. Weinstein and Ellen M. Flaum, Assistant Attorneys General, of Chicago, and Robert J. Biderman and Denise M. Paul, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Gary S. Rapaport, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Defendant, James Eichelberger, was charged by information in the circuit court of Ford County with possession of less than 30 grams of a substance containing lysergic acid diethylamide (LSD). (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b).) Defendant filed a motion to suppress evidence which had been taken from him following his warrantless arrest by Paxton police officers. Hearing was had on the motion immediately prior to trial. The motion was denied, and after a bench trial, defendant was found guilty and sentenced to a term of 18 months' imprisonment. The appellate court reversed and remanded. (92 Ill. App. 3d 1199.) In a Rule 23 order (73 Ill. 2d R. 23), the court ruled that the warrantless arrest and the subsequent search were unlawful. The court concluded that there were no exigent circumstances present to justify the warrantless arrest. We granted the State's petition for leave to appeal pursuant to Supreme Court Rule 315 (73 Ill. 2d R. 315). We now reverse.

At the suppression hearing defendant testified that on February 10, 1980, he was in his room at the Paxton Hotel in Paxton, talking with Michael Flavin. Flavin was asking

questions about drugs, and defendant was attempting to answer them. Defendant testified that the door to his hotel room was closed but "cracked open." Defendant was sitting on his bed when two officers entered his room with their guns drawn, arrested him and searched him.

Paxton police officer Walter Whitehill was also called to testify for the defense at the suppression hearing. He testified that on February 9, 1980, the day before the arrest of defendant, he was advised by another Paxton police officer, Officer Brown, that defendant was suspected of selling contraband at the Paxton Hotel. The following day, at about 8 a.m., both officers went to the Paxton Hotel. Officer Whitehill was in a room next door to that of defendant. After about an hour, defendant was observed entering his room with Michael Flavin. It was revealed during the trial that Flavin was a police informant and that he was attempting to set up a "controlled buy" from the defendant. It was also revealed that, following the arrest of defendant, some substance was also seized from Flavin and from the bed by Officer Brown, who was not available to testify. These items are not involved in this case.

Whitehill testified that he could see a patch of sunlight on the hallway floor, indicating that defendant's door was not closed. Neither the evidence at the suppression hearing nor that at the trial establishes clearly to what degree the door to defendant's room was open. Some testimony of the officer indicates it was open wide enough for him to see into the room when he stepped around the corner. The testimony of the defendant indicates it was only "cracked open." Whitehill then fully opened the door to his own room and stepped to the corner near the dividing wall between the two rooms in order to overhear defendant and Flavin. Whitehill testified that he heard Flavin ask defendant whether he had any "grams" and defendant answer in

the affirmative. Whitehill then heard Flavin say he wanted a "gram" and defendant reply: "You got it." Defendant also stated he expected to get some "coke" within the next few days. Whitehill testified that he knew that to people who use drugs the word "gram" refers to opium and the word "coke" refers to cocaine.

Whitehill gave a prearranged signal to Officer Brown indicating that he believed that a sale was occurring. Whitehill said that he then "stepped around the corner of the room" and arrested and searched the defendant.

Whitehill's search did not uncover any opium ("gram") or cocaine ("coke") on the defendant's person, but it did turn up several small squares of blotter paper in defendant's jacket pocket. Later at trial, the State introduced evidence that the small squares of blotter paper, on analysis by a State forensic scientist, contained less than one-tenth of a gram of a substance containing LSD.

The defendant argued to the trial court that the officers had information concerning the defendant's suspected illegal activities for more than 24 hours and, therefore, a search warrant should have been obtained. However, at the conclusion of the suppression hearing, the trial court stated:

> "It's obvious *** there [were] no grounds to get a search warrant before the officers believed an offense was taking place and once they believed that an offense was taking place they had a right to make an arrest."

The first issue to be considered is whether defendant retained a reasonable expectation of privacy in his hotel room when the door was "cracked open." Although the recent United States Supreme Court decision in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, concerned preserving the sanctity of the home and preventing intrusions which breach the entrance to the home, we note that this State has previously accorded the

residents of a hotel the same constitutional protections against unreasonable searches as are enjoyed by residents of private homes. *(People v. Bankhead* (1963), 27 Ill. 2d 18, 23; *People v. Wilson* (1980), 86 Ill. App. 3d 637, 640; see also 1 LaFave, Search and Seizure sec. 2.3(b) (1978); Annot., 86 A.L.R.2d 984 (1962), 68 Am. Jur. 2d *Searches and Seizures* sec. 18 (1973).) It follows, then, that the holding of *Payton*, that a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest is violative of the fourth amendment absent exigent circumstances, in this State applies to an occupant of a hotel room as well.

We must determine what effect should be accorded the "cracked open" door. At the suppression hearing, defendant testified that the door "was closed, but it was cracked open." Officer Whitehill testified that "you could tell by the sunlight on the floor [which he could see from his door] that the door of the room had been left open." The State urges that "[d]efendant did not seek to exclude the intruding eye or uninvited ear and shed his right to privacy by leaving his door open."

Although the State cites numerous cases in support of its argument that defendant has "waived" his fourth amendment rights by allowing his door to be "cracked open," defendant correctly points out that those cases deal with the propriety of observation, and not entry, into a hotel room. These are lesser intrusions into privacy than a physical entry into the home. (See *People v. Wright* (1968), 41 Ill. 2d 170, 174, *cert. denied* (1969), 395 U.S. 933, 23 L. Ed. 2d 448, 89 S. Ct. 1993; *Moody v. State* (1974), 52 Ala. App. 552, 295 So.2d 272; *State v. Brown* (1973), 9 Wash. App. 937, 515 P.2d 1008; *Borum v. United States* (D.C. App. 1974), 318 A.2d 590; *State v. Clarke* (Fla. App. 1970), 242 So.2d 791; 1 LaFave, Search and Seizure sec. 2.3(c) (1978).) In contrast, in the instant case, defendant argues that his fourth amendment rights were violated by the

warrantless *entry* of police officers into his hotel room and the subsequent arrest and search.

Other courts have recently considered what effect similar circumstances have on a defendant's expectation of privacy. (*United States v. Burns* (10th Cir. 1980), 624 F.2d 95, *cert. denied* (1980), 449 U.S. 954, 66 L. Ed. 2d 219, 101 S. Ct. 361; *United States v. Agapito* (2d Cir. 1980), 620 F.2d 324, *cert. denied* (1980), 449 U.S. 834, 66 L. Ed. 2d 40, 101 S. Ct. 107.) According to those courts, a defendant does have a legitimate expectation of privacy within his hotel room. However, in contrast to the occupant of a private dwelling who has the exclusive enjoyment of the land he possesses immediately surrounding his home, the hotel occupant's reasonable expectations of privacy are reduced with regard to the area immediately adjoining his room. (*United States v. Burns* (10th Cir. 1980), 624 F.2d 95, 100; *cert. denied* (1980), 449 U.S. 954, 66 L. Ed. 2d 219, 101 S. Ct. 361; *United States v. Agapito* (2d Cir. 1980), 620 F.2d 324, 328-32, *cert. denied* (1980), 449 U.S. 834, 66 L. Ed. 2d 40, 101 S. Ct. 107.) While defendant's "cracked open" hotel room door may have facilitated the overhearing of activities carried on within the room by those outside, that fact by itself was in no way an invitation to or a justification for a warrantless entry. This fact may, however, be relevant in considering whether the entry was forcible or peaceful.

If the warrantless entry is to be justified, then, it must be justified on the basis of exigent circumstances. (*Payton v. New York* (1980), 445 U.S. 573, 583, 63 L. Ed. 2d 639, 648, 100 S. Ct. 1371, 1378; *People v. Abney* (1980), 81 Ill. 2d 159, 168.) This court recently addressed the question of exigent circumstances at length in *Abney*. In that case the court considered the constitutionality of the Illinois arrest statute (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)) in light of the recent United States Supreme Court decision in

*Payton* which declared a similar New York statute to be unconstitutional. The court concluded that our statute was "in compliance with the constitutional guidelines enunciated in *Payton*" because "the principles of the exigent circumstances rule \*\*\* had been judicially engrafted upon the statute." (*People v. Abney* (1980), 81 Ill. 2d 159, 168.) This court then considered whether exigent circumstances were present in the facts of *Abney.*

*Abney* was an interlocutory appeal from a trial court suppression order. That order was affirmed by the appellate court. This court reversed. The court found that the exigent circumstances present "militated against delay and justified the officers' decision to proceed without a warrant" and that "[a]dditional factors also indicated that the officers acted in a reasonable fashion." *People v. Abney* (1980), 81 Ill. 2d 159, 168-69.

In *Abney* a police officer interviewed a beating victim in the hospital who gave him the name, description and address of the defendant, who had been seen heading home. It was only 1½ hours after the beating when two officers, without a warrant, entered the defendant's residence and seized a bullet in plain view. The defendant was not present. Later, it was found that the bullet matched the caliber of the pistol allegedly used in the beating. *People v. Abney* (1980), 81 Ill. 2d 159, 162-63.

In reaching its decision the court identified certain factors as worthy of specific mention. The factors singled out as exigent circumstances in *Abney* were: (1) the need for prompt action; (2) the absence of any deliberate or unjustified delay by the officers during which time a warrant could have been obtained, and (3) the belief that the suspect was armed and exhibited some sign of a violent character. (*People v. Abney* (1980), 81 Ill. 2d 159, 169-71.) In addition, other factors were identified which suggested that the officers had acted reasonably. Those factors were:

(1) the officers were acting on a clear showing of probable cause based on reasonably trustworthy information, (2) the defendant was clearly identified, (3) there was strong reason to believe that the defendant was present on the premises, and (4) the entry was peaceful. (*People v. Abney* (1980), 81 Ill. 2d 159, 171-72.) The court concluded that a warrantless entry was justified because of the compelling need for official action with no time to secure a warrant. *People v. Abney* (1980), 81 Ill. 2d 159, 173.

The case now before us is factually different from *Payton* and *Abney.* In those cases the crime had been committed some time prior to the arrest and the home was entered for the purpose of making an arrest. In our case a crime was being committed in the presence of the officers who made the arrest in response thereto. This case also differs from *Johnson v. United States* (1948), 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367. In *Johnson* a police officer had received information from an informant that unknown persons were smoking opium in a certain hotel. The officer and four narcotic agents went to the hotel, where they smelled the odor of burning opium. The odor led to a certain room. They did not know who occupied this room. They knocked on the door and were admitted. An officer placed the occupant under arrest and then searched the room. The government attempted to justify the warrantless search as incident to a lawful arrest. The court held that, under the applicable law, a warrantless arrest would be valid only if it were for a crime committed in the officer's presence or for a felony of which he had reasonable cause to believe defendant guilty. The court noted that prior to the entry there were ample grounds for the issuance of a warrant and stated that the government in effect conceded that the arresting officer did not have probable cause to arrest the defendant until after the entry had been made and the officer found the woman who admitted

them to be the sole occupant. In essence, the officer, prior to entry, did not possess the knowledge which justified a warrantless arrest of a person on the basis that an offense was committed in his presence.

In the instant case the offense in question occurred in the presence of the officers. In this State a police officer may arrest a person without a warrant when he has reasonable grounds to believe that the person is committing or has committed an offense. Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c); *People v. Phillips* (1964), 30 Ill. 2d 158, 160; *People v. Peak* (1963), 29 Ill. 2d 343, 347.

An offense is committed in an officer's presence when knowledge of the commission of an offense is acquired through any of his senses. It is not restricted to cases where knowledge thereof is provided by the officer's sense of sight. (*People v. Bradley* (1957), 152 Cal. App. 2d 527, 533, 314 P.2d 108, 111; *People v. Goldberg* (1967), 19 N.Y.2d 460, 465, 227 N.E.2d 575, 578, 280 N.Y.S.2d 646, 649-50; *Bass v. State* (1943), 182 Md. 496, 505-06, 35 A.2d 155, 159; see 5 Am. Jur. 2d *Arrest* sec. 31 (1962); 1 Callaghan's Ill. Crim. Proc. sec. 7.31, at 289 (1971).) In cases where the offense can be said to have been committed in the presence of an officer it has generally been held that the officer may enter the premises without a warrant for the purpose of making a warrantless arrest. See Annot., 76 A.L.R.2d 1432 (1961).

In our case, although the officers did not visually witness the delivery of a controlled substance, they could have reasonably believed, from what they overheard, that the delivery of a controlled substance was taking place. Such an offense is a felony under our statute. (Ill. Rev. Stat. 1979, ch. 56½, par. 1401.) The fact that the officers reasonably believed that a felony was being committed in their presence demanded prompt police action and constituted an exigent circumstance which justified the warrantless entry into the hotel room and the arrest.

This court has cautioned that each case must be decided on the basis of the facts of that case and that the guiding principle is reasonableness under the constitutional provisions governing searches and seizures. (*People v. Abney* (1980), 81 Ill. 2d 159, 173.) The fact that the arrest was made while the defendant was committing a felony in the presence of the officers establishes the reasonableness of the warrantless entry and arrest. However, the reasonableness test is further buttressed in this case by the fact that, unlike the situation that existed in *Johnson v. United States*, prior to the overheard conversation, there was no probable cause to support the issuance of a warrant. Therefore, there was no unjustified delay on the part of the officers in procuring a warrant. Also, the events occurred on a Sunday morning, in a small city, which made it highly unlikely that a warrant could readily be procured. We note also that the entry was peaceful, in that the door was open and there was no forcible entry. The factors which this court considered in *Abney* as justifying a warrantless entry and arrest are not exclusive. We note, however, that in addition to the fact that a felony was being committed in the presence of the officers, many of the factors which this court considered as demonstrating the reasonableness of the arrest in *Abney* are also present in this case.

Although defendant was charged with and convicted of possession, and not the sale or delivery, of a controlled substance, we must look to the circumstances that were known to the officers at the time they acted in order to determine whether or not they acted reasonably in a given case. *People v. Abney* (1980), 81 Ill. 2d 159, 173; *People v. Clay* (1973), 55 Ill. 2d 501, 504.

We hold that the warrantless entry into defendant's hotel room for the purpose of effecting an arrest did not violate defendant's fourth amendment right since the police officers reasonably believed that a felony was being com-

mitted in their presence. The warrantless arrest of the defendant being valid, the officers then had the right to conduct a contemporaneous search of the person of the defendant and the area within his immediate control. *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; 2 LaFave, Search and Seizure sec. 6.3 (1978).

Accordingly, the judgment of the appellate court is reversed, and the judgment of the circuit court of Ford County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE CLARK dissenting:

I feel that the majority's conclusion that the warrantless arrest of this defendant was valid is wrong.

The majority correctly recognizes that the United States Supreme Court decision in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, "that a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest is violative of the fourth amendment absent exigent circumstances, in this State applies to an occupant of a hotel room as well." (91 Ill. 2d at 365.) The majority realizes that the defendant has a legitimate expectation of privacy in his hotel room, and I agree that because the defendant's hotel room door was "cracked open," "that fact by itself was in no way an invitation to or a justification for a warrantless entry." 91 Ill. 2d at 366.

The United States Supreme Court in *Payton* noted that "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable" (445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380), and, "[a]bsent exigent circumstances, that threshold may not reasonably be crossed without a warrant" (445 U.S. 573, 590, 63 L. Ed.

2d 639, 653, 100 S. Ct. 1371, 1382).

Because the Supreme Court in *Payton* treated that case as one in which there was ample time for the arresting officers to obtain a warrant, it was not necessary for the court to examine the "exigent circumstances" that justify a warrantless entry, but nevertheless the court characterized such circumstances as involving an "emergency or dangerous situation." 445 U.S. 573, 583, 63 L. Ed. 2d 639, 649, 100 S. Ct. 1371, 1378.

I firmly believe that there were no such exigent circumstances here. The warrantless and unannounced entry into the defendant's hotel room was not justified. The officers were not responding to an emergency situation. Unlike the situation in *People v. Abney* (1980), 81 Ill. 2d 159, the officers did not suspect the defendant was armed; nor had the defendant exhibited violent tendencies. (Compare *People v. Abney* (1980), 81 Ill. 2d 159, 171.) The informant was not in danger; there was no reason to believe that the informant's physical safety was threatened. Nor was there any threat of an imminent destruction of evidence. The officers were not acting to curtail the defendant's flight or escape; nor were they chasing the defendant in "hot pursuit" into his hotel room. There was no danger; there was no emergency; there was no exigent circumstance.

The majority reasons that because "a crime was being committed in the presence of the officers who made the arrest in response thereto" (91 Ill. 2d at 368), the entry into the defendant's hotel room was justified. It is true that an officer may arrest a person when he has reasonable grounds to believe that the person is committing an offense in his presence. And an officer may rely upon his own senses in deciding if an offense is occurring.

Testimony at trial showed that Officer Whitehill overheard the informant ask the defendant if he had any "grams" and the defendant answered in the affirmative. Officer Whitehill overheard the informant say that he

wanted a "gram" and the defendant reply "you got it," and Officer Whitehill overheard the defendant say that he expected to get some "coke" within the next few days (91 Ill. 2d at 364).

It is not unreasonable to assume that an experienced police officer could, from listening to that conversation, believe that a drug sale was occurring. At this point, however, I believe the majority's analysis falls apart. The majority concludes that the reasonable belief of the police officers that a felony was being committed in their presence constituted an exigent circumstance which justified the warrantless unannounced entry into the hotel room. *Payton* is unequivocal in asserting that reasonable belief or probable cause is not enough to justify a warrantless entry. The Supreme Court recalled Justice Jackson's observation in *Johnson v. United States* (1948), 333 U.S. 10, 13-14, 92 L. Ed. 436, 440, 68 S. Ct. 367, 369:

" 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.' " (*Payton v. New York* (1980), 445 U.S. 573,

586 n.24, 63 L. Ed. 2d 639, 650 n.24, 100 S. Ct. 1371, 1380 n.24.)

In saying that a *reasonable belief* that an offense was being committed in the officers' presence constitutes an *exigent circumstance,* the majority stands the decision in *Payton* on its head.

The majority cites an A.L.R. annotation (91 Ill. 2d at 369) which states that when it can be said that an offense was committed in the presence of an officer, the officer may enter the premises without a warrant to make an arrest. However, the majority's reliance on that annotation is misplaced in view of the fact that cases referred to precede *Payton* by almost 20 years.

I have no doubt that there was no exigent circumstance here. A police officer is not required under the fourth amendment to delay action where there is a danger to the officer's or another's safety. But law-enforcement officials cannot set up a controlled buy of drugs and then attempt to justify an unannounced warrantless entry into a private hotel room by asserting that because the drug sale was in their presence it constituted an exigent circumstance.

Without exigent circumstances the unannounced entry into the defendant's hotel room was unlawful, the arrest unlawful and the subsequent search illegal. The motion to suppress the evidence obtained as a result of that search should have been granted.

I feel the majority misses the point of *Payton* in allowing the extent of fourth amendment protections to turn on the reasonable beliefs of the law-enforcement officials. I must voice a strong dissent.

GOLDENHERSH and SIMON, JJ., join in this dissent.